In re Donald L. CARPER, Sr. and Shirley P. Carper, Debtors.

John G. LEAKE, Trustee, Plaintiff,

v.

UNITED STATES of America, acting Through FARMERS HOME ADMINISTRATION UNITED STATES DEPARTMENT OF AGRICULTURE, Defendant.

Bankruptcy No. 5–85–00221.
Adv. No. 5–85–0081.

United States Bankruptcy Court,
W.D. Virginia,
Harrisonburg Division.

Aug. 4, 1986.

Douglas T. Stark, Harrisonburg, Va., for plaintiff.

Jennie L. Montgomery, Asst. U.S. Atty., and Demetrie L. Augustinos, U.S. Dist. Atty., Roanoke, Va., for defendant.

## MEMORANDUM OPINION

THOMAS J. WILSON, III, Chief Judge.

This matter arises upon the Trustee's Complaint to avoid certain transfers of property of Donald L. Carper, Sr., a Debtor herein (the "Debtor"), to the United States of America, through the Farmers Home Administration ("FmHA"). The "transfers" involved herein are the attachment of security interests in favor of FmHA in milk sale proceeds generated by the Debtor's dairy-farming operation within the 90–day preference period of 11 U.S.C. § 547(b)(4)(A). The Trustee maintains that the transfers are avoidable pursuant to 11 U.S.C. § 547(b) and that they are not made unavoidable by 11 U.S.C. § 547(c)(5) because—and to the extent that—the transfers enabled FmHA to improve its position within the preference period to the prejudice of undersecured creditors. The Court is called upon to determine, *inter alia,* the extent to which FmHA's improvement in position was "to the prejudice of other creditors holding unsecured claims" within the meaning of 11 U.S.C. § 547(c)(5).

### Findings of Fact

The facts herein have for the most part been agreed upon by stipulation. In conjunction with the Debtor's dairy farming operation, the Debtor has been at all times relevant hereto indebted to FmHA in an amount in excess of $100,000.00. To secure its claim, FmHA held, at all relevant times, perfected security interests in, *inter alia,* the Debtor's crops, plant products, farm equipment, inventory, livestock, farm products and supplies, and all products and/or proceeds thereof. FmHA's security interest accordingly attached to the milk produced by the Debtor's dairy operations.

On July 20, 1984, the Debtor and FmHA executed an "Assignment of Proceeds from the Sale of Dairy Products and Release of Security Interest" ("Assignment and Release") whereby the Debtor assigned to FmHA the sale proceeds from his sale of milk to Valley of Virginia Milk Producers Association (the "Milk Producers Association"), with a monthly upper limit of $1,679.00, and whereby FmHA released its lien on milk sold to the Milk Producers Association. The three payments from the Milk Producers Association to FmHA which are the focus of the instant adversary proceeding were made pursuant to the above Assignment and Release and were the last three of such monthly payments made to FmHA prior to the filing of the Debtor's voluntary Chapter 7 petition. The three payments, each in the amount of $1,679.00, were made successively on March 12, 1985, April 12, 1985, and May 13, 1985. The Debtor's bankruptcy petition was filed on May 21, 1985, and thus the three payments were all made within the ninety-day period immediately preceding the filing. It further appears that throughout this ninety-day period FmHA was undersecured and that both the amount of FmHA's claim against the Debtor and the value of its collateral remained constant, except to the extent that FmHA's security interest attached in, and FmHA received payment for, the milk sold within this period. The Trustee seeks pursuant to 11 U.S.C. § 547(b) to avoid the attachment of FmHA's security interest in the milk sold, and the sales proceeds generated, within the ninety-day period and, in effect, seeks to recover from FmHA the three payments pursuant to 11 U.S.C. § 550(a).

### Conclusions of Law

Subsection (b) of Bankruptcy Code § 547, 11 U.S.C. § 547(b), is the so-called "Avoidable Preference" provision of the Code which provides the trustee with the power to avoid those transfers of property interests of the debtor which satisfy each of the five enumerated elements of what is commonly referred to as a "preference". While Subsection (b) is the general rule, Subsection (c), 11 U.S.C. § 547(c), provides

specific exceptions to the rule, enumerating those transfers which a trustee may not avoid notwithstanding that they otherwise meet the definitional requirements of a preference. In the instant case, FmHA maintains in the first instance that the transfers involved herein are not preferences because they did not enable it to receive more than it would have received under a hypothetical Chapter 7 distribution and that therefore the fifth requisite element of a preference is lacking. *See* 11 U.S.C. § 547(b)(5). FmHA further argues that even if the § 547(b)(5) element of a preference should be deemed to have been met in the instant case, the transfers are nevertheless excepted from the Trustee's general avoidance power by 11 U.S.C. § 547(c)(5).

The Court finds FmHA's latter argument compelling. Assuming the transfers at issue in this case are preferences which would ordinarily be avoidable under the general rule of § 547(b), the Court concludes that the § 547(c)(5) exception to the Trustee's avoidance power applies in this case and precludes the avoidance of the milk payments to FmHA because of the absence of any prejudice to the holders of unsecured claims.

Section 547(c)(5) limits the extent to which the trustee may avoid as preferences those transfers which create perfected security interests in the Debtor's inventory or receivables. The Section is intended to deal with those creditors with floating security interests in after-acquired inventory and receivables, pursuant to Article Nine of the Uniform Commercial Code. The parties are in agreement that FmHA's floating liens in the milk and milk proceeds are of the type of security interests dealt with by § 547(c)(5).

Section 547(c)(5) provides that the trustee may avoid as preferences the creation of such Article Nine security interests in favor of an undersecured creditor, but only to the extent that they caused, within the applicable preference period, "a reduction ... of any amount by which the debt secured by such security interest exceeded the value of all security interests for such debt...." The language of the statute is far from lucid. But in more simple terms, § 547(c)(5) applies what is commonly referred to as the "improvement in position test," under which the trustee may avoid the perfection of security interests to the extent that they enabled the creditor to "improve its position" within the preference period. The improvement in position test applies only to creditors holding claims which are secured by after-acquired inventory or receivables but which claims were undersecured at the commencement of the applicable preference period. In determining whether, and the extent to which, a creditor has improved its position during the preference period, an application of the test compares the creditor's position on two dates only—the date of the filing of the bankruptcy petition and the date commencing the preference period. Intervening fluctuations in the creditor's position are irrelevant (except when the giving of new value makes applicable § 547(c)(5)(B) ). For purposes of § 547(c)(5), an undersecured creditor has improved its position when—and its perfected security interests may be avoidable to the extent that—the claim secured by inventory or receivables is *less* undersecured on the date of the filing of the bankruptcy petition than it was at the beginning of the preference period. An undersecured creditor holding a floating lien in inventory or receivables may potentially become less undersecured during this period in either of two ways, or a combination of both. First, the amount of its claim may have been reduced, by payment or otherwise, without an equivalent corresponding reduction in collateral. Second, and the primary focus of § 547(c)(5), the value of the collateral itself may have increased over and above any increase in the amount of the claim. In either event, the creditor is less undersecured, there is a "reduction ... of [the] amount by which the debt ... exceeded the value of all security interests for such debt...."

In the instant case, the Court finds no doubt that FmHA improved its position

within the preference period. Because FmHA is not an "insider" under 11 U.S.C. § 101(28), the applicable preference period is the ninety-day period prior to the Debtors' filing. *See* 11 U.S.C. §§ 547(c)(5)(A)(i), 547(b)(4)(A). The parties are in apparent agreement that, had the milk not been produced and sold during the ninety-day period, the amount of FmHA's claim and the value of its security would have remained constant. But the milk *was* produced, and for FmHA that meant the production of collateral. Because there is no evidence to indicate that the production of $5,037.00 worth of milk caused a corresponding reduction of equal or greater value in FmHA's other collateral, the Court would be hard-pressed to find that FmHA's position was not improved upon the production of each new gallon of milk.

■ But a trustee may not avoid every § 547(c)(5) improvement in position. Section 547(c)(5) is concerned only with creditor improvement which comes about at the expense of the bankruptcy estate. The section specifically limits the trustee's avoidance power to the extent of "the prejudice of other creditors holding unsecured claims."

■ There can be no doubt that some of the Debtors' assets had to go into the production of the milk. But it appears that FmHA had a perfected senior security interest in literally everything that went into producing the milk, including the livestock and their feed. To the extent that non-milk assets were depleted on account of the milk production, in effect converted into milk, it was at the expense of FmHA's other collateral and not at the expense of the Debtors' estate or of other undersecured creditors. The estate would clearly have been prejudiced had the Debtor, for example, incurred labor or delivery expenses in producing the milk, or had the Debtor sold off or otherwise converted assets unencumbered by FmHA's lien to support the milk production. But there is no indication that such was the case. The Court finds that the milk profit generated during the ninety-day period, FmHA's improvement in position

within the preference period, was not to the prejudice of creditors holding unsecured claims and that, accordingly, the Trustee may not avoid the transfers to FmHA under 11 U.S.C. § 547(c)(5). An appropriate order will enter.